# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| TONYA JEAN QUIVER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-13-41-F |
| | ) | |
| CAROLYN W. COLVIN,[1] | ) | |
| Acting Commissioner, | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Tonya Jean Quiver (Plaintiff) brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of Defendant Acting Commissioner's (Commissioner) final decision denying Plaintiff's applications for disability insurance benefits and supplemental security income payments under the Social Security Act. United States District Court Judge Stephen P. Friot referred the matter for proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (b)(3), and it is now before the undersigned Magistrate Judge. Upon review of the pleadings, the administrative record (AR), and the parties' briefs, the undersigned recommends the Commissioner's decision be affirmed.

---

[1] Effective February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as Defendant in this action.

## I. Administrative proceedings.

In support of her applications seeking disability insurance benefits and supplemental security income payments, Plaintiff alleged that she suffered from "fibromyalgia, eye problems, tinnitus, chronic maxillary sinus disease, recurrent pleurisy, asthma, low immune system, bladder incontinence/problems, irritable bowel syndrome, neurological problems, balance issues, cognitive, speech-language [i]mpairments, head and right-hand tremors, anxiety, and migraine headaches, and depression." AR 230. Plaintiff claimed that she became unable to work as a result of her conditions as of March 1, 2007. *Id.* The Social Security Administration (SSA) denied her claims at the State agency level. *Id.* at 65-67, 69-71.

Plaintiff challenged that determination by requesting a hearing before an administrative law judge (ALJ). *Id.* at 74. And, in May 2011, Plaintiff appeared with her non-attorney representative at an administrative hearing at which she, her husband Michael Quiver, and a vocational expert all testified. *Id.* at 28-57. By written decision, *id.* at 12-20, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 1, 2007 (her amended onset date). *Id.* at 14. He determined she was severely impaired by fibromyalgia, gastro esophageal reflux disease (GERD), sinusitis, and migraine headaches, *id.*, but had, nonetheless, the residual functional

capacity (RFC)[2] to perform less than a full range of sedentary work as defined in 20 C.F.R. § 404.1567(1) and § 416.967(a). *Id.* at 15.[3] The ALJ concluded that Plaintiff could not perform her past relevant work as a speech pathologist but that she could perform certain sedentary jobs in the national economy, such as an order clerk, a call-out operator, and a food and beverage clerk. *Id.* at 19. As such, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. *Id.* at 20.

The SSA Appeals Council denied Plaintiff's request for review, *id.* at 1-4, and Plaintiff now seeks review in this Court. Doc. 1.

## II. Determination of disability.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less

---

[2] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

[3] Specifically, the ALJ found Plaintiff had the RFC to (1) lift and carry ten pounds occasionally and less than ten pounds frequently; (2) sit for about six hours during an eight-hour workday and stand and walk for at least two hours during an eight-hour workday; (3) occasionally climb, balance, stoop, kneel, crouch, and crawl; (4) occasionally reach overhead; (5) understand, remember, and carry out simple, routine, and repetitive tasks, and (6) respond appropriately to supervisors, coworkers, the general public, and usual work situations. In addition, she must avoid concentrated exposure to extreme heat. AR 15.

than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing five steps). Under this sequential procedure, Plaintiff bears the initial burden of proving she has one or more severe impairments. *See* 20 C.F.R. §§ 404.1512, 416.912; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). Then, if Plaintiff shows she can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *See Turner*, 754 F.2d at 328; *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984).

### III. Analysis.

#### A. Standard of review.

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "'Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). In determining whether substantial evidence exists, the Court "will not reweigh the evidence." *Howard v.*

4

*Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004). Further, the harmless-error doctrine applies in social security cases "where, based on the material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

    **B.    Plaintiff's claims of error.**

Plaintiff claims that the ALJ erred in (1) ignoring the testimony of Michael Quiver, Plaintiff's husband, and (2) analyzing Plaintiff's credibility. Doc. 17, at 6.[4]

    **1.    The ALJ's failure to address the testimony of Michael Quiver, Plaintiff's husband.**

At the May 2011 administrative hearing in this matter, the ALJ first heard testimony from the Plaintiff. AR 33-47. She told the ALJ that in the last couple of years she sometimes has difficulty comprehending what she reads, explaining, "It's like I'm reading the words but it's not sinking in . . . ." *Id.* at 36. Some days, when speaking, "my words will get mixed up" and, when typing, her "letters get backwards, too [and i]t's like I forget where the keys are." *Id.* at 37. She believed that she was "continually . . . getting worse

---

[4]    Page citations to Plaintiff's brief are in sequential order and reflect this court's CMECF pagination.

. . . both mentally and physically" since 2009. *Id.* at 39. She testified that she "she can't seem to concentrate or, like, multitask . . . anymore." *Id.* at 40. She said her memory was bad and explained "[t]here's a lot of things I can't remember, but my husband and my kids continually tell me that it's getting really bad." *Id.*

Next, Plaintiff's husband testified. *Id.* at 48-52. He explained that about seventy-five percent of the time Plaintiff forgets or misinterprets conversations and plans they have made. *Id.* at 49-50. He also testified that "[m]ultitasking is out of the door anymore, for her" and that she is easily distracted. *Id.* at 51. He further observed that her condition "seems to be progressively getting worse [and that f]rom five years ago till now is night and day." *Id.*

The ALJ made no reference to Michael Quiver or to his testimony in his hearing decision. *Id.* at 12-20. As the Plaintiff contends, "[b]y reading the ALJ's decision, it is impossible to know that Michael Quiver testified during the administrative hearing." Doc. 17, at 12. She argues his "opinion" must be considered "[b]ecause [he] is a first-hand witness of [Plaintiff's] day-to-day activities . . . ." *Id.* According to Plaintiff, her "case should be controlled" by the Tenth Circuit's decision in *Clifton v. Chater*, 79 F.3d 1007 (10th Cir. 1996), which requires the ALJ to discuss the "uncontroverted evidence he

6

chooses not to rely upon, as well as significantly probative evidence he rejects."[5] *Id.* at 13; *see Clifton*, 79 F.3d at 1010 (citation omitted).

Here, Michael Quiver's testimony is essentially the same testimony Plaintiff provided about her day-to-day difficulties with comprehension, memory, and multi-tasking.[6] And, not only is the evidence cumulative, but also there is no indication that the ALJ rejected the testimony. Instead, he specifically found that Plaintiff's concentration, persistence, and pace were diminished and, as a result, restricted her to work where she would only be required to understand, remember, and carry out simple, routine and repetitive tasks. AR 19, 15.

---

[5]   Plaintiff also cites, Doc. 17, at 12-13, SSR 06-3p, 2006 WL 2329939 (Aug. 9, 2006), which sets out how evidence from non-medical sources who did not see Plaintiff in a professional capacity should be handled:

> In considering evidence from "non-medical sources" who have not seen the individual in a professional capacity in connection with their impairments, such as spouses, parents, friends, and neighbors, it would be appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence.

*Id.* at *6. Nonetheless, even as to *opinions* from sources who *have* seen the claimant in a professional capacity "there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision . . . ." *Id.* Here, Plaintiff acknowledges her husband did not see her in a professional capacity. Doc. 17, at 13.

[6]   Mr. Quiver did not testify that Plaintiff had a complete inability to comprehend and remember. *See* AR 48-52.

While it would have been far preferable for this ALJ to have specifically acknowledged Mr. Quiver's testimony, the record shows that he reached his decision only after considering *all* of the evidence. *Id.* at 12, 16. This Court takes the ALJ at his word. *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) ("[O]ur general practice, which we see no reason to depart from here, is to take [the] lower tribunal at its word."); *see also Clifton*, 79 F.3d at 1009-10 (10th Cir. 1996) (stating that an ALJ is not required to discuss every piece of evidence so long as the record demonstrates that he considered all of the evidence); *Davis v. Astrue*, 237 F. App'x 339, 342 (10th Cir. 2007) ("While the ALJ did not explicitly discuss the testimony [of claimant's wife], we do not believe this omission is grounds for remand given the nature of [the testimony], which was largely cumulative of her husband's testimony."); *Smith v. Colvin*, No. CIV-13-144-R, 2014 WL 50835, at *1 (W.D. Okla. Jan. 7, 2014) ("[A]lthough the [ALJ] did not indicate[] that he specifically considered the opinion of either Plaintiff's son or her friend, his decision state[d] that he considered all of the record evidence . . . . [and] the testimony offered by Plaintiff's son and the evidence submitted by her friend was largely cumulative of Plaintiff's own testimony.") (unpublished order).

Plaintiff has failed to establish reversible error in connection with the testimony of Michael Quiver.

### 2. The ALJ's assessment of Plaintiff's credibility was not erroneous.

Plaintiff challenges the ALJ's credibility determination on two fronts, arguing, first, that "[t]he nature of fibromyalgia is not a disease dependent on objective testing; thus, the ALJ's reliance on objective findings does not provide adequate evidence [Plaintiff] was not credible." Doc. 17, at 18. Because the ALJ "cited to particular sections of the medical evidence to support his findings," *id.* at 16, she asserts that "substantial evidence[7] does not support the ALJ's credibility findings." *Id.* at 17. Second, Plaintiff takes issue with the ALJ's finding that her credibility was diminished because of her lack of medical treatment from June 29, 2010 through March 31, 2011, arguing that the ALJ failed to consider that she could not afford treatment. *Id.* at 16.

### a. The Plaintiff misapprehends the ALJ's credibility findings with regard to her fibromyalgia.

Based on her arguments and supporting legal citations referencing the *diagnosis* of fibromyalgia, Plaintiff appears to argue that the ALJ improperly relied on objective findings to find that she does not actually suffer from the impairment of fibromyalgia. *Id.* at 11-13. To the contrary, the ALJ

---

[7] Plaintiff does not otherwise challenge the evidentiary underpinnings of the ALJ's credibility assessment.

concluded his credibility findings in the following manner: "[Plaintiff] may experience some pain and discomfort *from her fibromyalgia*[8] and migraines; however, the [ALJ] is not persuaded that her pain and discomfort is now or has been at a disabling level of severity, duration, and intensity as [Plaintiff] alleges (SSR 96-7p)." AR 18 (emphasis added). And, if Plaintiff is suggesting that the nature of fibromyalgia somehow alters the traditional evaluation of the believability of her claim that her fibromyalgia symptoms are *disabling*, she offers no legal support. "[T]he consistency or compatibility of nonmedical testimony with *objective medical evidence*" is one of the factors the ALJ should consider in determining the validity of Plaintiff's subjective claims. *Hargis v. Sullivan,* 945 F.2d 1482, 1489 (10th Cir. 1991) (emphasis added) (citation omitted).

Plaintiff's claim of error in this regard is unavailing.

### b. The ALJ's comment regarding Plaintiff's failure to seek medical treatment.

Plaintiff's claim is that she has suffered from disabling symptoms and limitations since March 1, 2007. AR 230. The ALJ began his assessment of the credibility of that claim by detailing the medical evidence and findings of record. *Id*. at 15-18. Apart from contrasting Plaintiff's subjective complaints

---

[8] The ALJ found at step two of the sequential evaluation that Plaintiff was severely impaired by fibromyalgia. AR 14.

with the objective medical evidence, he also considered the efficacy of her medications and the absence of any side effects. *Id.* at 18. Considering Plaintiff's daily activities, he found "[t]here is no indication that [Plaintiff's] ability to carry on the activities of daily living has been eroded to the extent that she would be precluded from engaging in all work activity." *Id.* Plaintiff makes *no* challenge to these findings. Doc. 17.

Rather, Plaintiff's complaint is only with the ALJ's concluding statement: "Finally, further diminishing [Plaintiff's] credibility regarding her alleged disabling symptoms is that the record fails to demonstrate any medical treatment from June 29, 2010 through March 31, 2011, for her impairments." AR 18. This comment by the ALJ was prompted by Plaintiff's testimony that when her husband's health insurance ceased, she stopped visiting doctors except for a bladder infection, sinus infections, and an ER visit. *Id.* at 39. In her brief, she points to a July 16, 2009 letter from Dr. Steven D. Jimerson indicating her past due account, noting that he could no longer provide her with medical care, except for emergencies over the next thirty days. *Id.* at 642.

Plaintiff is correct that her inability "to afford treatment . . . may be a legitimate reason for [her] failure to seek" it. *Miranda v. Barnhart*, 205 F. App'x 638, 642 (10th Cir. 2005) (citing *Threet v. Barnhart*, 353 F.3d 1185,

11

1190-91 n.7 (10th Cir. 2003) and *Thompson v. Sullivan*, 987 F.2d 1482, 1489-90 (10th Cir. 1993)). "[T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue *regular* medical treatment without first considering any explanations that the individual may provide." SSR 96-7p, 1996 WL 374186, at *7 (July 2, 1996) (emphasis added).

Nonetheless, Plaintiff does not question that substantial evidence supports the remainder of the ALJ's extensive credibility findings. Thus, in contrast to the facts in *Thompson*, 987 F.2d at 1490, where little was "left as 'substantial evidence' for the ALJ's determination of noncredibility," this single unsupported finding by the ALJ as to Plaintiff's lack of medical treatment does not undermine the ALJ's otherwise supportable credibility findings. *See Foster v. Chater*, No. 95-7049, 1995 WL 694132, at *2 (10th Cir. Nov. 24, 1995) (unpublished op.) ("Because the ALJ's credibility determination, here, was otherwise supported by substantial evidence, his passing comment that plaintiff could afford medication and physical therapy if she were to work was, at most, harmless error.").

## IV. Recommendation and notice of right to object.

For the reasons stated, the undersigned Magistrate Judge recommends the Commissioner's decision be affirmed.

12

The parties are advised of their right to object to this Report and Recommendation by the 23rd day of February, 2014, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The parties are further advised that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

SO ORDERED this 3rd day of February, 2014.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE